IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DANIEL N.,[1]

               Plaintiff,

      v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,[2]

               Defendant.

Case No. 3:20-cv-01119-SB

**OPINION AND ORDER**

_____

**BECKERMAN, U.S. Magistrate Judge.**

Daniel N. ("Plaintiff") brings this appeal challenging the Commissioner of the Social

Security Administration's ("Commissioner") denial of his application for Disability Insurance

Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction to hear this

appeal pursuant to 42 U.S.C. § 405(g), and all parties have consented to the jurisdiction of a U.S.

_____

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] Kilolo Kijakazi became the acting Commissioner of the Social Security Administration on or about July 9, 2021 and is substituted for Andrew Saul as the defendant. *See* FED. R. CIV. P. 25(d)(1).

Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court affirms the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

///

///

///

///

///

## BACKGROUND

### I.    PLAINTIFF'S APPLICATION

Plaintiff was born in May 1969, making him forty-eight years old on August 15, 2017, his alleged disability onset date.[3] (Tr. 79.) Plaintiff has an associate's degree and past relevant work as a patrol sergeant and patrol police sergeant. (Tr. 24, 38-39.) In his application, Plaintiff alleged disability due to diabetes, neuropathy, a back injury, poor vision, insomnia, essential tremors, posttraumatic stress disorder ("PTSD"), depression, anxiety, and high blood pressure. (Tr. 79-80.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on February 2, 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 15.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on April 24, 2019. (Tr. 33-76.) On July 24, 2019, the ALJ issued a written decision denying Plaintiff's application. (Tr. 15-26.) On May 20, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-6.) Plaintiff now seeks judicial review of the ALJ's decision. (Compl. at 1-3.)

---

[3] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 07-cv-01016, 2008 WL 4490024, at *4 n.3 (E.D. Cal. Sept. 30, 2008). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.* (citations omitted). Thus, Plaintiff's date last insured of December 31, 2021 (*see* Tr. 15) reflects the date on which his insured status terminated based on the prior accumulation of quarters of coverage. If Plaintiff established that he was disabled on or before December 31, 2021, he is entitled to DIB. *See Truelsen v. Comm'r Soc. Sec.*, No. 2:15-cv-02386, 2016 WL 4494471, at *1 n.4 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999))).

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 15-26.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 15, 2017, his alleged onset date. (Tr. 17.) At step two,

the ALJ determined that Plaintiff suffered from the following severe impairments: "[D]iabetes with neuropathy, depression, and posttraumatic stress disorder/anxiety[.]" (Tr. 17.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (Tr. 18.)

The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these limitations: (1) Plaintiff can lift and carry ten pounds frequently and twenty pounds occasionally; (2) Plaintiff can stand and/or walk for two hours during an eight-hour workday; (3) Plaintiff can sit for six hours during an eight-hour workday, but "should not be required to use the lower extremities for operation of foot controls"; (4) Plaintiff can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds; (5) Plaintiff can frequently handle, finger, and feel bilaterally; (6) Plaintiff needs to "avoid exposure to extreme colds"; (7) Plaintiff cannot "work around hazards such as unprotected heights and dangerous machinery," or "perform work that requires the operation of a motor vehicle"; (8) Plaintiff can have only occasional interaction with the general public; and (9) Plaintiff can "remember, understand, and carry out tasks or instructions that can be learned within a period of only 30 days or by demonstration, consistent with occupations with a specific vocational preparation (SVP) rating of 1 or 2[.]" (Tr. 19-20.) At step four, the ALJ concluded that Plaintiff was unable to perform his past relevant work as a patrol sergeant and patrol police sergeant. (Tr. 24.) At step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that he could perform, including work as an office helper, mail room clerk, and pricer. (Tr. 25-26.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by: (1) failing to provide clear and convincing reasons for discounting Plaintiff's symptom testimony; (2) failing to provide

germane reasons for discounting the lay witness testimony provided by Plaintiff's mother, Edna G.; (3) failing to provide legally sufficient reasons for discounting the opinions of Plaintiff's treating psychologist, Pamela Miller, Ph.D. ("Dr. Miller"), and examining psychologist, Bethany Franklin-Comb, Ph.D. ("Dr. Franklin-Comb"); (4) failing to conclude that Plaintiff meets or equals listing 11.14; and (5) formulating an RFC that did not include all of Plaintiff's credible limitations. As explained below, the Court finds that the Commissioner's decision is free of harmful legal error and supported by substantial evidence, and thus affirms the Commissioner's decision.

## I.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "'[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity

and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

### B.    Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 21, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ met that standard here.

### 1.    Neuropathy

As to Plaintiff's neuropathy, the ALJ observed that the medical record "confirms some [of Plaintiff's] issues with neuropathy," and therefore the ALJ formulated an RFC that limited Plaintiff's "standing/walking, use of lower extremities for operation of foot controls, and driving of a motor vehicle," and "limited [Plaintiff] to frequent handling, fingering, and feeling[.]" (Tr. 19, 21.)

The ALJ, however, stated that the "degree of limitation" caused by Plaintiff's "lower extremity functioning is called into question by," among other things, Plaintiff failure to follow up on his treating provider's recommendation to pursue physical therapy for "balance issues stemming from neuropathy." (Tr. 21, citing Tr. 648, February 11, 2019, Jesse Papac, M.D. ("Dr. Papac"), observed that Plaintiff has "moderate-severe" neuropathy and the "PT referral for balance [was] pending"; *see also* Tr. 65, April 24, 2019, Plaintiff acknowledged that Dr. Papac

recommended that he pursue physical therapy and asked him "if it had been followed up on," and Plaintiff told the ALJ that despite this discussion, he was "not doing [physical therapy] currently"; Tr. 43, Plaintiff testified that he has "no balance" because of his neuropathy and needs to sit down or "touch a wall" to avoid falling over in the shower, and he "often fall[s] anyway"; Tr. 20, the ALJ recounted that Plaintiff testified that "his neuropathy affects his balance such that he often falls," and "he has to sit down or lean against the shower wall while taking a shower").

In *Rice v. Saul*, 817 F. App'x 395, 398 (9th Cir. 2020), the Ninth Circuit held that the ALJ satisfied the clear and convincing reasons standard, noting that the ALJ "reasonably determined that the severity of [the claimant's] subjective complaints was not fully credible because . . . [the claimant] failed to attend physical therapy," and that "'[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). The same rationale applies here. Plaintiff reported significant issues with neuropathy and balance but failed to attend physical therapy. The ALJ reasonably accounted for Plaintiff's failure to follow up on Dr. Papac's treatment recommendation in evaluating Plaintiff's testimony and reported limitations.[4] *See Newcomer v. Berryhill*, 716 F. App'x 652, 654 (9th Cir. 2018) (holding that the ALJ satisfied the clear and convincing reasons standard and observing that the ALJ appropriately discounted the claimant's testimony because she "failed to comply with prescribed physical therapy treatment").

///

_____

[4] Plaintiff did not raise any specific challenge to the ALJ's finding regarding physical therapy.

PAGE 8 – OPINION AND ORDER

In discounting Plaintiff's testimony and the need for more severe neuropathy-related limitations, including manipulative limitations, the ALJ also observed that Plaintiff at one point reported that his neuropathy was well-controlled with medication, and that Plaintiff reported "spending time crafting, doing art, . . . organizing things," and "cleaning his home[.]" (Tr. 21, citing Tr. 560, October 18, 2017, Plaintiff's provider noted that Plaintiff's neuropathy was "currently well controlled with his Gabapentin," Tr. 617, October 4, 2018, Plaintiff reported that he "now spends his time attending appointments, crafting, doing art, and organizing things," and Tr. 704, March 11, 2019, Plaintiff reported that he had been "cleaning" his house; *cf.* Tr. 20, the ALJ noted that Plaintiff testified that due to the neuropathy symptoms in his hands, "he cannot feel the amount of tension that he is applying when holding an object such that he has to use both hands, and that it hurts to type"; Tr. 45, "[I]f I try to open a jar or something, I can't feel how much tension I have on things[.] . . . So [at times] I just have to use two hands. . . . [E]ven typing, it hurts[.]").

The Ninth Circuit has affirmed an ALJ's decision to discount a claimant's testimony regarding the limiting effects of his impairments under circumstances similar to those described above. *See, e.g.*, *Tidwell v. Saul*, 836 F. App'x 523, 526 (9th Cir. 2020) (holding that the ALJ provided clear and convincing reasons for discounting the claimant's testimony and noting that the ALJ relied on records reflecting that the claimant's impairments were "well controlled with medication," and the claimant's testimony about certain activities that he "had the capacity" to perform, which "contradicted" his testimony). Plaintiff, however, argues that the ALJ erred in relying on Plaintiff's report that his neuropathy was well-controlled with medication and reported activities, noting that "finding a person with this level of pain has it 'controlled' does not indicate that he can work on a regular and continuing basis," Plaintiff's "bilateral neuropathy

worsened to the point he experienced stocking-glove distribution numbness," Plaintiff

"experiences dysesthetic pain in his feet, and only notes *less* pain when taking gabapentin," and

Plaintiff "did not contradict his testimony," as "[h]e never stated he could not perform any

activity" and "stated he could use his hands, but would be in pain later." (Pl.'s Opening Br. at 7-

8.)

In the Court's view, Plaintiff's arguments amount to advocating for alternatives to the

ALJ's rational interpretation of the record, which is insufficient to demonstrate error. *See*

*generally Crawford v. Berryhill*, 745 F. App'x 751, 753 (9th Cir. 2018) (rejecting objections to

the ALJ's findings because they "amount[ed] to advocating for alternatives to the ALJ's rational

interpretation of the record and therefore [did] not demonstrate error"); *Burch*, 400 F.3d at 679

(stating that "[w]here evidence is susceptible to more than one rational interpretation, it is the

ALJ's conclusion that must be upheld"); *Wilcox ex rel. Wilcox v. Colvin*, No. 13-2201-SI, 2014

WL 6650181, at *5 (D. Or. Nov. 24, 2014) (explaining that the claimant's "alternative

interpretation of the evidence [was] insufficient to overturn the ALJ's findings"). Even if that is

not the case, however, Plaintiff's failure to follow Dr. Papac's recommendation and referral to

physical therapy is a valid reason for not fully crediting Plaintiff's self-reports regarding the

limiting effects of his neuropathy, and in turn not including more severe limitations in Plaintiff's

RFC.

### 2.    Mental Impairments

In discounting Plaintiff's testimony, the ALJ also found it to be "of great significance"

that Plaintiff's treating psychologist, Dr. Miller, "has not indicated that [Plaintiff's] condition is

so severe as to preclude all work activity[.]" (Tr. 21, citing Tr. 639-42.) In fact, Dr. Miller's

March 1, 2019 treating source statement reflects that she rated Plaintiff's limitations in each of

twenty categories of mental ability, and found no limitation or mild limitation (i.e., a

PAGE 10 – OPINION AND ORDER

"[s]uspected impairment of slight importance which does not affect [the] ability to function") in eighteen categories and only moderate limitations (i.e., "[a]n impairment which affects but does not preclude [the] ability to function") in two categories (i.e., Plaintiff's ability to "perform activities within a schedule, maintain regular attendance, [and] be functional with customary tolerances," and ability to "accept instructions and respond appropriately to criticism from supervisors"). (Tr. 639-42; *see also* Tr. 23, the ALJ further described Dr. Miller's opinion in her decision).

As to the moderate limitations Dr. Miller identified, the ALJ observed that she formulated an RFC that limited (1) Plaintiff to unskilled work (a reduction from Plaintiff's past "skilled" work) because it was "reasonable to assume that by reducing his stress, [Plaintiff] would be able to interact more appropriately with others [and] adapt to changes in the workplace environment," and (2) Plaintiff's interaction with the public based on his "reported difficulty being around many people." (Tr. 21-22, citing Tr. 357, November 23, 2016, Plaintiff reported that "[h]is work is very stressful and . . . admit[ted] it is difficult not to get angry and out of control/angry," and Tr. 309, August 30, 2017, Plaintiff reported that he "resign[ed]"/"quit" his job at the police department and, in turn, "experienced a significant drop in his ongoing stress levels").

In his reply brief, Plaintiff argues that the ALJ's reliance on Dr. Miller's opinion is misplaced, noting that "'[m]oderate' limitations are not the same as none at all," and that the RFC does "not reflect [Dr. Miller's] moderation limitations." (Pl.'s Reply Br. at 3.) The Court finds Plaintiff's argument unpersuasive. Dr. Miller's treating source statement defined a moderate limitation as one that "affects but does not preclude [the] ability to function" in the given area, and the ALJ responded by limiting Plaintiff to unskilled/less stressful jobs that "can

be learned within a period of only 30 days or by demonstration, consistent with occupations with

[an SVP] rating of 1 or 2," and involve only occasional interaction with the general public. (*See*

Tr. 19-20, 26.) Plaintiff does not explain why such limitations fail adequately to accommodate

the limitations the ALJ and Dr. Miller identified, or why he would miss "in excess of one day per

month" in an unskilled, less stressful job when he was able to sustain skilled work for over

twenty years. (Tr. 73; *cf.* Pl.'s Reply Br. at 3, arguing without explanation that the RFC fails to

accommodate Plaintiff's ability to respond appropriately to supervisors or "perform within the

constraints of a schedule" or "moderate pace and social limitations," and failing to address

several of the ALJ's notable findings and citations discussed herein; *see also* Tr. 24, 311,

Plaintiff maintained skilled work for "24 years"; Tr. 72, the VE explained that the jobs identified

as suitable for Plaintiff involve only "intermittent interaction" with co-workers "but nothing

sustained").

  Given the above evidence and observations, the Court concludes that the ALJ did not

commit harmful error in discounting Plaintiff's testimony based on Dr. Miller's opinions. *See*

*Goss v. Kijakazi*, No. 20-15978, 2021 WL 5447016, at *1 (9th Cir. Nov. 22, 2021) (holding that

the ALJ satisfied the clear and convincing reasons standard and noting that the ALJ discounted

the claimant's testimony because the claimant's physician reported that one of his allegedly

disabling impairments resulted in "only moderate limitations"); *see also Tarah M. v. Comm'r of*

*Soc. Sec.*, No. 19-00808, 2020 WL 4727392, at *4 (W.D. Wash. Aug. 14, 2020) (holding that the

ALJ did not err in evaluating opinion evidence and noting that the claimant did "not explain how

the limitations contained in the RFC are insufficient to accommodate her psychological

symptoms").

///

### 3.    Conclusion

For these reasons, the Court concludes that the ALJ did not commit harmful error in discounting Plaintiff's testimony because the ALJ provided at least one clear and convincing reason for doing so. *Cf. Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's decision to discount the claimant's testimony because the ALJ "provided at least one clear and convincing reason supported by substantial evidence for rejecting [the] testimony as not credible"); *Gilliland v. Saul*, 821 F. App'x 798, 799 (9th Cir. 2020) (noting that an ALJ's errors are harmless if the ALJ "provided at least one valid reason to discount [the] testimony") (citation omitted).

## II.    LAY WITNESS TESTIMONY

### A.    Applicable Law

An ALJ "'must consider lay witness testimony concerning a claimant's ability to work.'" *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). The ALJ cannot disregard such testimony without providing reasons that are "'germane to each witness.'" *Stout*, 454 F.3d at 1056 (citations omitted). "Inconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). "Germane reasons for rejecting a lay witness' testimony [also] include inconsistencies between that testimony and the claimant's presentation to treating physicians or the claimant's activities, and the claimant's failure to participate in prescribed treatment." *Barber v. Astrue*, No. 1:10-cv-1432-AWI-SKO, 2012 WL 458076, at *21 (E.D. Cal. Feb. 10, 2012). Furthermore, "when an ALJ provides clear and convincing reasons for rejecting the [reliability] of a claimant's own subjective complaints, and the lay-witness testimony is similar to the claimant's [subjective] complaints, it follows that the ALJ gives 'germane reasons

for rejecting' the lay testimony." *Williams v. Astrue*, 493 F. App'x 866, 869 (9th Cir. 2012) (citation omitted).

### B.    Analysis

Plaintiff argues that the ALJ erred by failing to provide germane reasons for discounting the lay witness testimony provided by Plaintiff's mother, Edna G. (Pl.'s Reply Br. at 6-7.) Even assuming that the ALJ erred in discounting Edna G.'s testimony, any error was harmless. To be sure, Plaintiff does not dispute that there is substantial overlap and similarity between Edna G.'s testimony and Plaintiff's testimony. (*See* Pl.'s Reply Br. at 7, "[I]f the testimony is similar, and the ALJ failed to give clear and convincing reasons to reject [Plaintiff's] testimony, the ALJ likewise failed to give a germane reason for rejecting the lay witness testimony. . . . As noted *supra*, the ALJ did not provide substantial reasons for dismissing [Plaintiff's] testimony."). The Court finds that there is substantial overlap and similarity between Edna G.'s testimony and Plaintiff's testimony (*compare* Tr. 191-98, *with* Tr. 199-206), and therefore concludes that any error was harmless because the ALJ provided at least one clear and convincing reason for discounting Plaintiff's testimony, which applies with equal force to Edna G.'s testimony. *See Jacob v. Berryhill*, 756 F. App'x 709, 712 (9th Cir. 2018) (finding that "any error was harmless" in discounting the lay witness testimony, which overlapped substantially with the claimant's, because the ALJ's reasons for rejecting the claimant's testimony applied with equal force to the lay witness).

## III.    MEDICAL OPINION EVIDENCE

### A.    Applicable Law

Plaintiff filed his application in August 2017. (Tr. 15.) "For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. 416.920c governs how an ALJ must evaluate medical opinion evidence." *Tyrone W. v. Saul*, No. 3:19-cv-01719-IM, 2020 WL 6363839, at *6

(D. Or. Oct. 28, 2020) (citation omitted); *see also Linda F. v. Saul*, No. 20-cv-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020) ("Because [the] plaintiff filed her applications after March 27, 2017, new regulations apply to the ALJ's evaluation of medical opinion evidence.").

Under the new regulations, the Commissioner will "no longer give any specific evidentiary weight," let alone controlling weight, "to any medical opinion." *See Allen O. v. Comm'r of Soc. Sec.*, No. 3:19-cv-02080-BR, 2020 WL 6505308, at *5 (D. Or. Nov. 5, 2020) (simplified), *appeal filed* No. 21-350006 (9th Cir. Jan. 4, 2021). Instead, as this Court recently explained, "the ALJ considers all medical opinions and evaluates their persuasiveness based on supportability, consistency, relationship with the claimant, specialization, and 'other factors.'" *Robert S. v. Saul*, No. 3:19-cv-01773-SB, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021) (simplified).

"The new regulations require ALJs to articulate how persuasive they find all of the medical opinions and explain how they considered the supportability and consistency factors." *Id.* (simplified). At a minimum, "'this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion.'" *Id.* (quoting *Linda F.*, 2020 WL 6544628, at *2). Accordingly, "the more relevant the objective medical evidence and supporting explanations presented and the more consistent with evidence from other sources, the more persuasive a medical opinion or prior finding." *Id.* (quoting *Linda F.*, 2020 WL 6544628, at *2).

"The ALJ may but is not required to explain how other factors were considered," including (1) the "relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination)," (2) "whether there is an examining relationship," (3)

specialization, and (4) "other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Id.* The ALJ is, however, "required to explain 'how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical,'" and courts "must 'continue to consider whether the ALJ's analysis has the support of substantial evidence.'" *Id.* (citations omitted).[5]

### B.    Analysis

#### 1.    Dr. Miller

##### a.    Dr. Miller's Opinion

Dr. Miller completed a treating source statement on March 1, 2019, which reflects that she rated Plaintiff's limitations in each of twenty categories of mental ability. Dr. Miller found that Plaintiff suffers from no limitation or mild limitation (i.e., a "[s]uspected impairment of slight importance which does not affect [the] ability to function") in eighteen categories and only moderate limitation (i.e., "[a]n impairment which affects but does not preclude [the] ability to function") in two categories (i.e., Plaintiff's ability to "perform activities within a schedule, maintain regular attendance, [and] be functional with customary tolerances," and the ability to "accept instructions and respond appropriately to criticism from supervisors"). (Tr. 639-42.)

---

[5] The Commissioner argues that "the new regulations govern here, and supersede prior case law that conflicts with them," *i.e.*, case law requiring an ALJ to provide clear and convincing or specific and legitimate reasons for discounting a medical opinion. (Def.'s Br. at 9.) Consistent with its prior decisions, the Court will consider whether the ALJ adequately addressed the persuasiveness, including the supportability and consistency, of medical opinion evidence, because "[t]he Ninth Circuit has not yet addressed whether or how the new regulations alter the standards set forth in prior cases for rejecting a medical opinion," and "the new regulations still require the ALJ to explain [his] reasoning for discounting a medical opinion . . . to allow for meaningful judicial review." *Robert S.*, 2021 WL 1214518, at *4 (citations omitted).

Dr. Miller also reported that Plaintiff experiences sleep disturbance and is easily fatigued. (Tr. 638.)

### b.    The ALJ's Decision

The ALJ found Dr. Miller's opinion to be "largely persuasive." (Tr. 23.) In so finding, the ALJ emphasized that Dr. Miller found mostly no limitation or mild limitation in the twenty categories of mental ability that she rated, Dr. Miller "did not indicate that [Plaintiff's] condition would be so severe as to preclude all work activity," Dr. Miller "had the opportunity to observe [Plaintiff's] mental functioning on a first-hand basis over a longitudinal period," and Dr. Miller's opinions "appear[ed] consistent" with the record evidence discussed in the ALJ's decision regarding Plaintiff's "functioning." (*Id.*) The ALJ, however, partially credited Plaintiff's self-reports in finding "an overall greater degree of limitation in terms of [Plaintiff's] ability to understand, remember, or apply information than opined by Dr. Miller." (*Id.*) Additionally, the ALJ noted that Dr. Miller's opinion is "unsupported by reference to objective findings either in the form she completed or in her treatment notes in the record[.]" (*Id.*, citing Tr. 703-10.)

### c.    Disposition

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for discounting Dr. Miller's opinion, noting that "the ALJ's RFC does not reflect the attendance and concentration limitations Dr. Miller provides." (Pl.'s Opening Br. at 9.) Plaintiff also argues that the ALJ "ignores [that] Dr. Miller found limitations in concentration, fatigue, and sleep disturbances," and that in addressing the "paragraph B" criteria applicable to steps two and three, the ALJ found that Plaintiff was "moderately limited in concentrating, persisting, or maintaining pace," but "the ALJ does not explain how or why this moderate limitation does not affect [Plaintiff] at work, particularly when [Dr. Miller] stated it would affect his attendance." (Pl.'s Opening Br. at 9-10.)

Plaintiff fails to demonstrate that the ALJ committed reversible error in partially discounting Dr. Miller's opinion. In her decision, the ALJ explained that the "paragraph B" criteria are used at steps two and three, that a claimant's mental RFC assessment at steps four and five "requires a more detailed assessment of the areas of mental functioning," and that the RFC "reflects the degree of limitation [that the ALJ] has found in the 'paragraph B' mental function analysis." (Tr. 19.) As discussed in Part I.B.2., the ALJ also explained her findings regarding Plaintiff's mental functioning and why she included the limitations set forth in the RFC.

Plaintiff, however, does not explain why a moderate limitation (i.e., "[a]n impairment which affects but does not preclude [the] ability to function" in the given area) in the ability to "perform activities within a schedule, maintain regular attendance, [and] be functional with customary tolerances" is not accommodated by a limitation to unskilled, less stressful work and the ability to miss work once a month. That is significant because the record reflects that (1) Plaintiff held a skilled position for over twenty years, and (2) despite noting that Plaintiff is easily fatigued, has difficulty concentrating, and experiences sleep disturbance (Tr. 638), Dr. Miller determined that Plaintiff suffers from no limitation in the ability to make simple work-related decisions or work in coordination with or proximity to others without being distracted, and only mild limitation (i.e., a "[s]uspected impairment of slight importance which *does not affect* [the] ability to function" in the given area) in the ability to carry out very short and simple instructions, carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 639-41)

(emphasis added). Given these findings, the ALJ formulated a reasonable RFC determination. *See Yang v. Comm'r of Soc. Sec.*, No. 19-890, 2020 WL 5816575, at \*23 (E.D. Cal. Sept. 30, 2020) (holding that "the ALJ's review and analysis of all the evidence of mental impairments, and combining the various opinions and evidence into a reasonable RFC determination was not error").

Furthermore, as the ALJ observed in her decision, Dr. Miller's form demonstrates that she declined several opportunities to provide comments in support of her opinions, and that Dr. Miller's explanation regarding her conclusion, which the form described as "very important," was quite limited: "Patient has a history of depressed mood and difficulty adhering to schedule. Patient often suffers [from] fatigue, anhedonia, and sense of worthlessness." (*See* Tr. 637-39, 642-43.) Dr. Miller's treatment records are also limited, largely unremarkable, and lack explanation, as the ALJ noted. (*See* Tr. 703, April 8, 2019, Dr. Miller did not rate Plaintiff's symptoms or functional impairment (e.g., work, school, family, and social) in the spaces provided or assign a Global Assessment of Functioning ("GAF") score; Tr. 704, March 11, 2019, same; Tr. 705, February 5, 2019, same; Tr. 706, January 21, 2019, Dr. Miller did not rate Plaintiff's functional impairment or assign a GAF score but did rate Plaintiff as suffering from no suicidal or homicidal ideation; Tr. 707, October 15, 2018, Dr. Miller rated Plaintiff as suffering from mild pain and tremors and moderately severe sleep disturbance, but did not rate Plaintiff's functional impairment or assign a GAF score; Tr. 708, July 16, 2018, Dr. Miller did not rate Plaintiff's symptoms or functional impairment or assign a GAF score; Tr. 709, June 13, 2018, same; Tr. 710, May 21, 2018, Plaintiff completed a patient and insurance information form for Dr. Miller's office). Given this evidence, the ALJ did not err in discounting Dr. Miller's opinion. *See Bayliss*, 427 F.3d at 1216 (explaining that "an ALJ need not accept the opinion of a

doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings")
(citation omitted).

For these reasons, the Court concludes that Plaintiff fails to demonstrate that the ALJ
committed reversible error in partially discounting Dr. Miller's opinion. *See Jenkins v. Colvin*,
No. 1:15-cv-01135, 2016 WL 4126707, at *10 (E.D. Cal. Aug. 2, 2016) (noting that "the party
attacking the agency's determination bears the burden of proving any error was harmful")
(citation omitted); *see also Gilliland*, 821 F. App'x at 799 (explaining that any errors are
harmless if the ALJ "provided at least one valid reason" for not fully crediting evidence)
(citation omitted).

### 2. Dr. Franklin-Comb

#### a. Dr. Franklin-Comb's Opinion

On October 4, 2018, Plaintiff presented for a compensation and pension examination
conducted by Dr. Franklin-Comb, a psychologist with the Department of Veterans Affairs.
(Tr. 616-19.) Dr. Franklin-Comb diagnosed Plaintiff with "moderate" major depressive disorder
and PTSD. (Tr. 616.) As to symptoms, Dr. Franklin-Comb checked the boxes for depressed
mood and anxiety. (Tr. 619.) As to behavioral observations, Dr. Franklin-Comb noted that
Plaintiff was "[c]ooperative, . . . appropriately dressed and groomed, normal speech, calm
psychomotor, full affect, upbeat mood, normal cognition, good insight and judgment, [and]
denied suicidal or homicidal ideation." (*Id.*) As to occupational and social impairment,
Dr. Franklin-Comb checked a box indicating that Plaintiff experiences "occasional decrease in
work efficiency and intermittent periods of inability to perform occupational tasks, although
generally functioning satisfactorily, with normal routine behavior, self-care and conversation[.]"
(Tr. 617.)

///

b.        **The ALJ's Decision**

The ALJ found Dr. Franklin-Comb's opinion to be "somewhat persuasive" because she "conducted an in-person examination" and "her opinion is largely consistent with the above-described record as a whole as it relates to [Plaintiff's] mental functioning[.]" (Tr. 23.) The ALJ, however, discounted Dr. Franklin-Comb's opinion, in part, because it was "not entirely supported given the results of her examination, as described above, were unremarkable." (*Id.*)

c.        **Disposition**

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for discounting Dr. Franklin-Comb's opinion. (Pl.'s Opening Br. at 10.) Plaintiff acknowledges that the ALJ found Dr. Franklin-Comb's examination results "unremarkable" but claims that this amounts to criticizing Dr. Franklin-Comb's opinion with "boilerplate language," and that the ALJ "did not even provide the ostensibly unremarkable results from this examination." (Pl.'s Opening Br. at 10-11.) Not so. The Ninth Circuit routinely affirms decisions to discount medical opinions based on unremarkable examination results. *See, e.g.*, *Benear v. Saul*, 838 F. App'x 305, 306 (9th Cir. 2021) (affirming the ALJ's decision to discount a physician's opinion and emphasizing that the ALJ noted that "the results of [the physician's] examinations were unremarkable"). Furthermore, and contrary to Plaintiff's argument, the ALJ described the results she found unremarkable: Plaintiff suffers from only "occasional decrease in his work efficiency and intermittent periods of inability to perform occupational tasks," but he is "generally functioning satisfactorily with normal routine behavior, self-care and conversation." (Tr. 23, 617.) Plaintiff fails adequately to explain why any limitations referenced in Dr. Franklin-Comb's opinion are not accommodated by unskilled, less stressful work, an ability to miss work once a month, and an employer's customary tolerances for being off-task.

Additionally, Dr. Franklin-Comb's behavioral observations were also unremarkable: "[Plaintiff is] [c]ooperative, . . . [and] appropriately dressed and groomed, [Plaintiff exhibited] normal speech, calm psychomotor, full affect, upbeat mood, normal cognition, [and] good insight and judgment, [and Plaintiff] denied suicidal or homicidal ideation." (Tr. 619); *see generally Fenton v. Colvin*, No. 6:14-cv-00350-SI, 2015 WL 3464072, at *1 (D. Or. June 1, 2015) ("The Court is not permitted to affirm the Commissioner on a ground upon which the Commissioner did not rely, but the Court is permitted to consider additional support for a ground on which the ALJ relied." (citing *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006))).

For these reasons, the ALJ did not commit harmful error in discounting Dr. Franklin-Comb's opinion.

## IV.    LISTING 11.14

Plaintiff argues that the ALJ failed adequately to consider whether Plaintiff meets or equals listing 11.14 (peripheral neuropathy), and that "it is impossible to gauge the ALJ's assessment" because she did "not tie any of [the] facts to her listing analysis." (Pl.'s Opening Br. at 13, citing Tr. 18). In support of his listing argument, Plaintiff emphasizes that he has "no balance" and "has been recommended physical therapy because his balance is poor." (Pl.'s Opening Br. at 13.)

Plaintiff fails to demonstrate that the ALJ committed harmful error in finding that he did not meet his burden of proving that he met or equaled listing 11.14. The ALJ explained that Plaintiff's peripheral neuropathy has not resulted in "disorganization of motor function in two extremities resulting in an extreme limitation[] . . . in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities," or "a marked limitation in physical functioning[.]" (Tr. 18.) Later in her decision, the ALJ noted that Plaintiff's

lower extremity functioning was "called into question" by Plaintiff's failure to pursue physical therapy for balance issues, Plaintiff often exhibited normal gait and "5/5 strength in all extremities," and Plaintiff performed manipulative activities. (Tr. 21.) Given these findings and the evidence described herein, the ALJ did not commit harmful error in finding that Plaintiff did not meet or equal listing 11.14. *See generally Fowler v. Kijakazi*, No. 20-36016, 2021 WL 5823704, at *2 (9th Cir. Dec. 8, 2021) (holding that "any error was harmless" because there was "no basis to conclude that it would have altered the ALJ's analysis"); *Wicken v. Colvin*, No. 15-cv-01124, 2016 WL 1358375, at *2 (W.D. Wash. Apr. 5, 2016) ("[S]ubstantial evidence supports the ALJ's finding that [the claimant] did not meet his burden of proving that he had the required persistent disorganization of motor function and sustained disturbance of gait in Listing 11.14.").

## V.      THE ALJ'S RFC ASSESSMENT

Relying on the assignments of error addressed above, Plaintiff argues that substantial evidence does not support the ALJ's RFC assessment. The Court rejects this argument for the reasons stated.

## CONCLUSION

Based on the foregoing reasons, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 14th day of December, 2021.

HON. STACIE F. BECKERMAN
United States Magistrate Judge